FISH *v.* NEBRASKA CITY BARB-WIRE FENCE Co. and others.[1]

(*Circuit Court, D. Nebraska.* December 30, 1885.)

CORPORATION—AGREEMENT AS TO DISSOLUTION AND DISTRIBUTION OF PROPERTY.

A., the owner of a patented machine to make barbed wire, with certain other parties, organized a corporation under the Nebraska statute, to make barbed wire, and three days thereafter all the stockholders signed an agreement, stipulating that if it should be demonstrated that the capital stock was not a paying investment, "which fact was to be determined by the majority of the board of directors within one year from April 1, 1884," the corporation should be dissolved, and the assets distributed, after payment of debts, as follows: A. to receive the machines, and the other stockholders the remaining property. The investment did not pay, and on February 18, 1885, the directors, acting in good faith, so determined, and tendered A. the machines, and were proceeding to dispose of the balance of the property as agreed, when A. filed a bill to restrain them. *Held,* that he was not entitled to relief.

On Bill and Cross-bill. The opinion states the facts.

*C. W. Seymour,* for complainant.

*E. F. Warren,* for defendant.

BREWER, J. Complainant was the owner of a machine for making barb-wire fence, upon which he had a patent. After some preliminary negotiations, he, with the personal defendants, on January 7, 1884, organized the Nebraska City Barb-wire Fence Company, and incorporated the same under the laws of the state of Nebraska. He was to have 49 per cent. of the stock, and they the balance. On January 10, 1884, three days thereafter, all the stockholders signed an agreement, stipulating that if it should be demonstrated that the capital stock was not a paying investment, "which fact is to be determined by a majority of the board of directors of said company within one year from April 1, 1884," the corporation should be dissolved, and the assets distributed after payment of debts in this manner, complainant to receive the machines and the other stockholders the remaining property. On February 18, 1885, the directors determined the fact of failure, as above authorized, tendered complainant the machines, and proceeded to dispose of the balance of the property in accordance with said agreement. Complainant, repudi-

---

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

ating such action, filed his bill. I held on the pleadings last spring that, although the statutes of Nebraska provided ways and means for working the dissolution of a corporation, such an agreement, signed by all the stockholders, was valid *inter sese*. I see no reason to doubt the correctness of that ruling. The owners of property can make any contract for its disposal not forbidden by law, or against public policy or good morals.

It was further averred that such action and determination of the board of directors was not in good faith or founded upon reasonable ground. Testimony has been taken. I have examined this, and am clear that the directors acted in good faith and upon the most sufficient and satisfactory reasons. Indeed, from a business stand-point, I do not see how any other action could be justified.

The facts are, briefly: Prior to the incorporation, complainant had a machine completed and in working order, though in imperfect condition. It manufactured barb wire, though its working and results were not satisfactory. Some slight changes and improvements, he represented, were all that were necessary. On the strength of these representations and the apparent workings of the machine the company was organized; he putting in his machine, patent, and license, for 49 per cent. of the stock; the other stockholders putting in money for the 51 per cent. to buy ground and erect a factory building. This they did. The first machine did not reach Nebraska City until November 10, 1884. During the intervening months the company was receiving letters from him every week or two, saying that the machines (for he was making two for it) were nearly ready; would be done in a day or two; only required some slight touches, or a little polishing; that he was hurrying the work as fast as he could, and would ship in a few days; or in some similar manner giving assurance and arousing expectations only to be followed by delay and disappointment. Soon after the arrival of the machine, the complainant and Mr. Hill, the inventor, came and set the machine up in the factory. Mr. Hill remained five days and complainant as many weeks, but neither succeeded in making the machine do any practically successful work. It is useless to speculate as to the causes; whether because the building was not sufficiently heated,—it being, as complainant says, extremely cold weather, and only a single stove in the entire building,—or because of a mistake in putting so heavy a machine in the second story, and so exposing it to a considerable vibration, or for any other suggested or possible cause.

The important fact is that it did not work successfully. Shortly before the holidays complainant went to his home in Chicago, and did not return until just before the meeting of the directors on February 18, at which the resolution of failure was passed.

It may be that the obstacles to success were such that a little more time and labor would have overcome them; it may be that complainant has now the most perfect and valuable machine in the world for

making barb wire; it may be that a little more perseverance on the part of defendants would have developed for them an enterprise most profitable to all parties. But from their stand-point, and at that time, it must be affirmed that they acted prudently and in a business way. They were business men, not machinists or inventors. They invested their money on the faith of what he could do with his machine. They waited 13 months, and over, and he was still unable to do successful works. True, he continued his assurances of coming success, but "hope deferred maketh the heart sick." To have continued the experiment longer would have demonstrated that they were men who lived by faith and not by works. In one month and ten days their time for retreat would be gone. Thereafter they would have to divide their money with him, while he would only share with them this as yet unsuccessful machine. Prudence commanded what they did. Hence the complainant has failed to make out his case, and his bill must be dismissed at his costs.

It seems that 65 shares of stock were in fact and as an accommodation issued to complainant. Hence defendants' cross-bill must be sustained, the stock ordered canceled and surrendered on delivery of machine, and complainant barred of all interest in other property of the company. As to the $2,000 advanced to complainant, I think, under the contract, it belongs to him, and no accounting or recovery is ordered as to that.